UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

ZAYER A. ADAMS                                                PLAINTIFF

v.                                                  No. 5:25-cv-41-BJB

MORGAN BRGOCH, ET AL.                                        DEFENDANTS

* * * * *

OPINION & ORDER DISMISSING THE CASE

In 2022, Zayer Adams filed a *pro se* complaint in this Court. That complaint asserted state-law negligence claims against four University of Kentucky physicians: Morgan Brgoch, "M. Garrett," Evan Lynch, and Paul Spicer. These doctors, Adams claimed, botched two hand surgeries performed in July 2022 and October 2022. *See* Case No. 5:22-cv-168 (DN 1) (W.D. Ky. Nov. 30, 2022). The Court determined that a substantial part of the events occurred in the Eastern rather than Western half of the Commonwealth: in Fayette County (at UK Health Care) and Morgan County (at the Eastern Kentucky Correctional Complex). So the Court transferred his case to the U.S. District Court for the Eastern District of Kentucky.

After the transfer, Adams filed an amended complaint that added a claim under the Eighth Amendment, alleging that the Defendants showed "deliberate indifference to the Plaintiff's serious medical need." Case No. 5:23-cv-164 (DN 1-4) at 1 (E.D. Ky. Aug. 16, 2023). The amended complaint also omitted the state-law medical-negligence claims presented in Adams' original complaint. In March 2024, the Eastern District judge entered judgment (DN 1-5) against Adams, dismissing his Eighth Amendment claim with prejudice. But the Court's order noted that although no state-law claims were asserted in the pleading under review, the dismissal was "without prejudice" to any such claims Adams might file (or re-file) in an appropriate jurisdiction. *See Adams v. Garrett*, 5:23-cv-164, 2024 WL 1180943, at *7 (E.D. Ky. Mar. 19, 2024).

About a year later, in March 2025, Adams—again representing himself *pro se*—did indeed file a new complaint.[1] He again named three of the same physicians

---

[1] The Defendant styled his filing (DN 1-1) as a "Declaration of Rights" under KY. REV. STAT. § 418.040. Considering the "less stringent" pleadings standards that apply to *pro se* plaintiffs, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), the Court

(Brgoch, Lynch, and Garrett Minor) as Defendants.[2]  He again alleged that those Defendants damaged his hand during the July and October 2022 surgeries.  As in his 2023 Amended Complaint, he again omitted any mention of state-law medical-negligence claims.  And he again claimed the doctors' actions violated the Eighth Amendment.  Unlike in his 2022 and 2023 complaints, however, Adams also brought First and Fourteenth Amendment claims—albeit based on the same basic factual allegations.[3]

Adams filed his 2025 Complaint in Lyon (County) Circuit Court. The Defendants removed the action to this Court based on the federal constitutional claims and filed a motion to dismiss based on *res judicata*.[4]  Adams did not respond, despite the Court's order that he do so.  Because the Court agrees with the Defendants that the 2024 Eastern District dismissal bars relitigation regarding his hand injuries in this 2025 case, and because Adams has otherwise failed to prosecute his case, the Court grants the Defendants' motion to dismiss.

## A.  Res Judicata

Under the doctrine of *res judicata*, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  The doctrine "promot[es] the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judidical resources." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).

---

construes this as a complaint for damages.  *See* 2025 Complaint (DN 1-1) at 8–9 (seeking "damages in the amount of $1 million dollars" from each Defendant).

[2] The 2022 case names "M. Garrett," a University of Kentucky physician who allegedly participated in the Defendant's care.  The 2025 Complaint names a "Dr. Garrett M. Minor" as one of the University of Kentucky doctors.  The Defendants' motion here states that Dr. Minor was wrongly identified as Dr. M. Garrett in the first Complaint—an explanation that Adams has not contested.  *See* Motion to Dismiss (DN 4) at 7 n.3.

[3] Adams also appears to have filed a subsequent "medical malpractice" complaint in Fayette Circuit Court against Brgoch in May 2024.  *See* Complaint in Case No. 24-CI-1685 (attached here at DN 1-6).  That court denied Adams' motion for a declaratory judgment, DN 1-7, the Kentucky Court of Appeals dismissed his appeal, DN 1-8, and the trial court then dismissed for failure to prosecute.

[4] The Defendants alternatively moved to dismiss the case for failing to state a claim under FED. R. CIV. P. 12(b)(6) or to transfer the case to the Eastern District of Kentucky because of improper venue.

For this defense to succeed, defendants bear the burden of proof and must show:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action; and

4. An identity of the causes of action.

*Autumn Wind Lending, LLC v. Est. of Siegel by & through Cecelia Fin. Mgmt.*, LLC, 92 F.4th 630, 634–35 (6th Cir. 2024) ("party asserting the defense of *res judicata* bears the burden of proof") (quotation marks omitted).

Adams has not filed a response to the Defendant's motion even though the Court has given him almost a year to do so.  After Adams purported to take an appeal following the filing of the motion to dismiss (but before any district-court order), the Court of Appeals dismissed the appeal and, upon remand, this Court urged Adams to file a response.  *See* January 9, 2026 Order (DN 17) (noting "Adams has still not responded to the motion" and allowing him another opportunity to respond).  But he did not.  So by now the Court may treat the motion as unopposed.  Regardless, the Defendants are correct that *res judicata* bars his current claims.

First, Adams' previous lawsuit undoubtedly resulted in a final decision on the merits.  The Eastern District judge in Adams' prior case entered a judgment dismissing Adams' 2023 Amended Complaint "with prejudice as to [the] Eighth Amendment claim."  Judgment (DN 10-5), Case No. 5:23-cv-164 (DN 1-5).  Even construing his pleadings liberally "in light of [his] *pro se* status," that Court held that "Adams still fail[ed] to adequately allege an Eighth Amendment claim against any of the Defendants in either their official or individual capacities."  *Adams v. Garrett*, 5:23-cv-164, 2024 WL 1180943, at *3 (E.D. Ky. Mar. 19, 2024).

Second, the three Defendants named in Adams' current complaint were parties to the Eastern District of Kentucky case.  *Compare* 2022 Complaint (DN 1-3) *and* 2023 Amended Complaint (DN 1-4) *with* 2025 Complaint (DN 1-1).

Third, Adams' current lawsuit again brings an Eighth Amendment claim—though it now adds claims under the First and Fourteenth Amendments.[5] But *res judicata* not only bars claims already litigated, but those "which *should* have been litigated in the first action." *Autumn Wind Lending*, 92 F.4th at 635 (emphasis added & citation omitted). Adams' First and Fourteenth Amendment claims also arise from the hand surgeries and follow-up appointments: Dr. Lynch allegedly retaliated against him, in violation of his First Amendment rights, by refusing to treat Adams after he complained to Dr. Lynch that he "mess[ed] [his] hand up" during the July 2022 surgery. 2025 Complaint (DN 1-1) at 4. He also alleges that the doctors acted with "deliberate indifference," in violation of the Fourteenth Amendment, throughout the course of his medical care: Dr. Lynch allegedly "broke [his] hand with a hammer" and "left a piece of glass in his hand," while Dr. Minor and Dr. Brgoch refused to remove the glass in follow-up surgeries. *Id.* at 3, 6. Why Adams' prior lawsuit could not have included these additional constitutional claims, which complained of the same injuries and same causes by the same doctors, isn't apparent. *See* 2022 Complaint (DN 1-3) (complaining of "piece of glass" left in his hand during 2022 surgeries).

Fourth, and finally, the current and prior actions must share a (confusingly labeled) "identity of the causes of action." *Autumn Wind Lending*, 92 F.4th at 635. Counterintuitively, this doesn't pertain to the legal cause of action (addressed above in the third element) but instead, in the context of *res judicata* as articulated by the Sixth Circuit, "means an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) (quotation marks omitted). "[T]he critical consideration is operative 'factual overlap' between the claims." *Trustees of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting*, 919 F.3d 368, 384 (6th Cir. 2019). As already noted, the prior and current lawsuits allege most of the same facts and injuries against the same Defendants. Each of Adams' complaints allege he was injured by the Defendants while they treated his hand, starting with his initial surgery by Dr. Lynch in July 2022. Both lawsuits complain of broken glass left in his hand and the subsequent failure to remove it. This suffices to satisfy *res judicata*'s fourth element.

The only significant addition in the latest lawsuit is the 2025 Complaint's mention of an additional February 2023 hand surgery. But that surgery, which happened six months *before* he filed his Amended Complaint in August 2023, involves

---

[5] Adams' 2025 Complaint makes references to violations of the Hippocratic Oath. *See* 2025 Complaint (DN 1-1) at 3. This is not a cause of action that is recognized in state or federal law.

4

a related surgery, by the same doctors, to fix the same hand injuries. All of these surgeries "arose out of the same transaction or series of transactions" or "out of the same core of operative facts." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir. 2008). And nothing suggests these facts couldn't have been alleged in his 2023 Amended Complaint. Adams' failure to allege facts related to the final surgery in his that pleading, therefore, cannot revive his previously dismissed claims in this Court. *See Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, No. 4:09-cv-94, 2013 WL 309177, at \*6 (W.D. Ky. Jan. 25, 2013) (*res judicata* barred subsequent suit because claimant "had enough knowledge regarding" the facts underlying its suit "to bring its claims" in prior proceeding).

And in any event, any claim based on a follow-up surgery in February 2023 would be subject to dismissal under Rule 12(b)(6) for failing to state a claim, as the Defendants' motion to dismiss explains. *See* DN 4 at 4. Adams mentions the third surgery a few times in passing. *See* 2025 Complaint (DN 1-1) at 2 (Adams "traveled on three separate occasions" to UK Healthcare for surgeries during which "his hand had been damaged"); *id.* at 4 (follow-up surgeries "performed on October 7th, 2022, and February 13th, 2023"); *id.* at 6 (Dr. Brgoch "failed to remove the foreign object" in his hand during second and third surgeries). He does not connect these facts to the First or Fourteenth Amendments at all. And his allegations that the third surgery amounted to "deliberate indifference" under the Eighth Amendment are conclusory at best. *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

## B. Failure to Prosecute

Dismissal would also be appropriate based on Adams' failure to prosecute this case over the past year. Federal Rule of Civil Procedure 41(b) authorizes district judges to grant a motion to dismiss a lawsuit if a plaintiff violates a court order or fails to prosecute the case. *See Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). Although federal courts afford *pro se* litigants leniency on matters that require legal sophistication, such as formal pleading rules, the same approach does not necessarily apply to court deadlines and other procedures readily understood by laypersons. *Id.* at 110. "[T]he lenient treatment generally accorded to *pro se* litigants has limits," as the Court of Appeals has explained. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Where, for example, a *pro se* litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than

a represented litigant." *Id.* This is particularly true when a plaintiff simply fails to pursue the case at all. *Jourdan*, 951 F.2d at 110.

Trial judges wield "substantial discretion" in exercising this authority in service of these broader goals of case management and judicial stewardship. *Id.* To determine whether dismissal is appropriate, courts in this circuit consider (1) the plaintiff's "willfulness, bad faith, or fault" in causing the delay, (2) any prejudice the plaintiff has caused the defendants, (3) whether the court has warned the plaintiff "that failure to cooperate could lead to dismissal," and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (citation omitted).

The Defendants removed Adams' case to this Court in March 2025 and moved to dismiss the case a few weeks after that. Adams missed the deadline to oppose this motion. Rather than respond, Adams filed an appeal with the Sixth Circuit. The Court of Appeals dismissed the interlocutory appeal, but Adams still did not respond to the pending motion to dismiss. In January of 2026, moreover, the Court ordered Adams to respond to the motion. *See* January 9, 2026 Order (DN 17). Adams did not respond substantively to that order, either. Although someone purporting to write on his behalf filed a "notice" that Adams "has limited literacy and needs assistance understanding written documents." *See* Notice (DN 18).[6] Adams then filed another "notice" with the single statement that he "want[s] to proceed." DN 19. That, of course, fails either to respond to the motion's arguments or indicate that Adams is prepared to prosecute the case he filed more than a year ago.

Although nothing indicates that Adams is acting with "bad faith," dismissal is nevertheless appropriate. The Court has afforded Adams almost a year to file an opposition brief. And the Court's last order warned him that failure to pursue his claims could result in dismissal of his case. Considering the futility and inefficiency of the current situation, plus the prejudice to the Defendants caused by their continuing to have to defend against these allegations (a second or even third time, depending on how one counts the Fayette County litigation), no other alternative is appropriate. So dismissal for failure to prosecute is warranted regardless of the bar interposed by *res judicata*.

---

[6] The Court may not consider documents filed by a non-lawyer on behalf of a *pro se* party. *See Bass v. Leatherwood*, 788 F.3d 228, 230 (6th Cir. 2015) (noting "the rule against non-lawyer representation.").

**ORDER**

The Court grants the motion to dismiss (DN 4) and closes the case.  This is a final order.